UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TODD RAY JONES,<br><br>     Petitioner,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>     Respondent. | Case No. 1:10-cv-00384-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Todd Ray Jones's *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255. (Dkt. 1). Having reviewed the record, including the record in the underlying criminal case, the Court will deny the motion.

## BACKGROUND

On August 2, 2007, Idaho State Police executed a search warrant at Defendant Todd Jones's residence. The search warrant was authorized by Judge Roger B. Harris of the Fifth Judicial District for the State of Idaho. *Gov't Ex. K*, Dkt. 41-15.  Detective Scott Ward provided the Judge with a signed search warrant affidavit.  *Gov't Ex. J*, Dkt 41-13.

The search warrant affidavit explains that the Idaho State Police began an investigation of Todd Jones in January 2007. *Id.* ¶ 2.  Cody Adams and John Rearick

were stopped in Utah where troopers found ten pounds of marijuana in their car.  *Id.*

Adams told Utah police officers that drugs in their possession were being delivered to

Todd Jones. *Id.*  They stated that Jones had recently moved from Seattle, Washington to

Twin Falls, Idaho.  *Id.*

Detective Ward then began a background investigation on Jones and determined

that Jones and his wife Susan Jones owned a 2004 black Cadillac registered to an address

in Everett, Washington.  *Id.*  The driver's license check showed that both Jones and his

wife had licenses in Washington.  *Id.*  Jones's criminal history check showed several

arrests in Washington, including "Possession with intent to Deliver Drugs, Manufacturing

with intent to Deliver Marijuana, Assault, Felon in possession of a fire arm,…[and]

Delivery of Cocaine." *Id.*

The affidavit stated that on July 31, 2007, Idaho State Police interviewed Dustin

and Jamie Brower.  *Id.* The Browers informed detectives that six months prior they had

met Todd and Susan Jones and had become friends with them soon after.  *Id.*  The

Browers gave the detectives personal information about Jones, saying he had recently

moved from Seattle, his birthday was July 31, and he owned a red Ford Taurus and a

Black Cadillac, which records confirmed.  *Id.* ¶ 2-3.

The Browers told officers that Jones lived at 252 Leisure Lane, and described the

house as a "singlewide mobile home tan in color with an eight-foot wooden fence around

the property with three gates."  *Id.* ¶ 3. The Browers also told detectives that the Jones

had three surveillance cameras positioned around the property.  *Id.*

Mr. Brower told officers he had personally seen a two-foot tall marijuana plant and growing lights in Jones's bathroom. *Id.* Mr. Brower also stated that Jones told him on several occasion that he had a grow room under the house. *Id.* Mr. Brower stated he had witnessed "numerous drug deals" inside of Jones car, and that in the last four months Mr. Brower had introduced four or five people to Jones so they could purchase both prescription pills and marijuana. *Id.* ¶ 4. Mr. Brower said Jones asked him during the first week of July 2007 to go to Bliss, Idaho and get money from Cody Adams for the marijuana the police confiscated in Utah. *Id.* Mr. Brower stated he had seen Jones in possession of three different firearms including: (1) a 45-caliber revolver, (2) a 25-caliber semi-automatic handgun, and (3) a 9mm or 45-caliber handheld weapon. *Id.*

On July 31, 2007, Detective Sweesy and Detective Ward identified the property referenced by the Browers as a 252 Leisure Lane. *Id.* The Detectives stated the property was on the northeast corner of Leisure Lane and Villa Road and the numbers 252 were attached to the doorframe. *Id.* They stated there were two gate entrances visible from the street, and there appeared to be a camera under the car port. *Id.* The police attached a photo of the residence to the search warrant affidavit. *Gov't Ex. J-1*, Dkt. 41-14.

In the affidavit, Detective Ward referenced his training and experience to analyze the information given by the Browers, and found that the information conformed to what is normally seen during investigations into the drug trade. *Id.* ¶ 5. Detective Ward also listed items he believed should be seized in connection with the alleged crimes. *Id.* ¶ 5-6.

The search warrant was issued on August 1, 2007, to search the residence at 252

Leisure Lane and included the following description:

> A Single wide, Tan colored trailer with tan and brown trim.  The trailer is located
> in the northeast corner of Leisure Lane and Villa Road.  The trailer sits at an angle
> on the lot and has an eight foot wooden fence around the property.  The fence is
> painted tan.  The fence has a doublewide gate in the driveway are.  The gate is a
> natural wood color and has a peak in the middle of the gate.  The tan fence has a
> no trespassing sign affixed to it.  An American flag is mounted under the eve of
> the carport.  The numbers 252 are affixed to the west side of the doorframe.  There
> are several large pine and leaf type trees on the property in the front and back
> yard.

> *Gov't Ex. K* ¶ 1, Dkt. 41-15.

The search warrant allowed officers to search for and seize the following items:

> … apparent instrumentality's or items connected with the sale or use of a
> controlled substances or evidencing of the same, *firearms*, U.S. currency or other
> valuables easily liquidated for cash in such amounts or situated or packaged in
> such a way as to make apparent that such are proceeds of trafficking in controlled
> substances or manufacturing a controlled substance, utility records, receipts,
> envelopes, letters, keys, and other indicia of control, ownership, of said
> residence….

> *Id.* ¶ 1-2 (emphasis added).

Idaho State Police executed the search warrant on August 2, 2007.  *Gov't Ex. L* ¶

9, Dkt. 41-16.  Detective Ward pulled Jones over in his car and showed him the original

search warrant; Detective Ward then provided him with a copy.  *Id.*  He then asked Jones

to follow him to the residence while the police searched the house.  *Id.*

Detective N. Corder took pre- and post-search video of the residence and took

digital photos of all evidence found in the residence and in the backyard.  *Id.* Mrs. Jones

showed detectives the location of a gallon-sized Ziploc bag containing marijuana and

several small plastic bags in the bedroom.  *Id.* ¶ 1, 9. While the detectives were securing the residence, they also located in the master bedroom a British 303 bolt-action rifle, a smaller Ziploc bag containing 2.3 grams marijuana, 6.4 grams rolled marijuana cigarettes, a colored glass pipe, digital electronic scales, a tan pill bottle containing marijuana seeds, a tan pill bottle with mixed pills, four pill bottles in the name of Todd Jones, a horticultural lamp, a four foot light with a hood, two hi-capacity magazines, and proof of residency for both Todd and Susan Jones. *Id.* ¶ 9-12.

In the kitchen Detectives found 67.7 grams marijuana in a Starbucks paper bag. *Id.* ¶ 12. Mrs. Jones also provided detectives with the key to a gun safe located in the kitchen.  Inside the safe detectives found a Beretta 22 Cal long rifle semi-automatic handgun with four rounds in the magazine, a Smith and Wesson 357 revolver loaded with six 357 magnum rounds, and a US 9mm SMG frame, barrel and stock.  *Id.* The safe also held six live 357 magnum rounds, eight spent 357 casings, and an orange plastic ammo box containing thirteen live rounds of 357 magnum rounds and thirteen spent casings. *Id.* A black wallet containing identification for Todd Jones was also located in the safe, along with additional proof of residence for both Todd and Susan Jones.  *Id.* Detectives also located a two-foot tall marijuana plant in the backyard. *Id.*

The grand jury indicted Jones on May 14, 2008. *Indictment*, Criminal[1] Dkt. 1. The indictment charged Jones with four counts: (1) possession of a firearm, a U.S., M-3 45-caliber machine gun, not registered in the national firearm registration and transfer record in violation of 26 U.S.C. § 5861(d); (2) possession of three firearms—the machine gun, a Beretta 22-caliuber semi-automatic pistol, and a Smith and Wesson 357-caliber revolver—by a person convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(1)(D); (3) possession of a British 303 bolt-action rifle in violation of 18 U.S.C. §§ 922 (g)(1) and 924(a)(1)(D) ; and (4) Criminal Forfeiture of all the firearms and ammunition pursuant to 18 U.S.C § 924(d) and 28 U.S.C. § 2461(c). *Id.* The defendant was released at arraignment on a bond pending trial. *Arraignment*, Criminal Dkt. 4.

Thomas Monaghan took over as defense counsel for Jones on September 4, 2008. *Notice*, Criminal Dkt. 14.  On December 16, 2008, Jones entered into a written plea agreement. *Gov't Ex. A*, *Plea Agmt.*, Dkt. 41-1.  In the Plea Agreement, Jones waived his right to a direct appeal or to collaterally attack his judgment and conviction through a § 2255 in exchange for the Government dropping two counts of the indictment.  *Id.* ¶¶ 2, 9. However, Jones retained the right to file one motion under § 2255 for "ineffective assistance of counsel based solely on information not known to the defendant at the time the district court imposed sentence and which, in the exercise of reasonable diligence,

---

[1] Reference to the criminal case U.S. v. Jones, 1:08-cr-00114-BLW-1.

could not have been known by the defendant at that time." *Id.* ¶ 9. Under the plea

agreement, the government stated it would recommend at sentencing that Jones receive

credit for acceptance of responsibility. *Id.* ¶ 1.

On January 6, 2009, Jones pled guilty to Counts Two and Four of the indictment.

*Gov't Ex.* ¶ 29:19-21, Dkt. 41-2.  In order to determine Jones's competency during the

change of plea hearing, the magistrate judge asked Jones a series of questions.  *Id.* Jones

told the Magistrate Judge that he had completed high school and that he could "read,

write and understand the English language without difficulty." *Id.* ¶ 4. Jones also

informed the Magistrate Judge that he had taken half his normal dosage of prescription

drugs that morning. *Id.* ¶ 4.  On a follow up question, Jones clarified that the medications

would not interfere with his ability to understand the proceedings. *Id.* ¶ 4-5. Jones stated

that the purpose of the hearing was to "accept responsibility for [his] crime." *Id.* ¶ 5.

However, Jones's counsel, Mr. Monaghan expressed that he had a "slight concern"

regarding the competency of his client.  *Id.* As an explanation for his concerns, Mr.

Monaghan referenced Jones's history of mental health issues and other serious medical

conditions that required medication. *Id.*  Mr. Monaghan stated that although he had these

concerns, it was his impression that Jones was competent to proceed based on "prior

conversations with him and meeting with him." *Id.*

Based on these concerns, the Magistrate Judge continued to question Jones

regarding his medications and medical history. *Id.* ¶ 6.  Jones stated that his doctors and

health care providers had not indicated any concerns about his competency.  *Id.*  Jones

also stated that he had no concerns about his ability to understand the change of plea hearing, and he stated he "understood fully." *Id.* ¶ 7.

After these answers, the Magistrate Judge asked Mr. Monaghan if he still had concerns regarding Jones's competency to proceed. *Id.* Mr. Monaghan stated that "in his opinion, [Jones was able] to respond to the Court's questions intelligently." *Id.* ¶ 8.  Mr. Monaghan stated that although he was "concerned about some of [Jones'] demeanor" earlier that day, he believed Jones could proceed under the competency standard.  *Id.* Mr. Monaghan stated that he believed Jones was "able to comprehend the nature of the proceedings" and could assist in his representation. *Id.* Mr. Monaghan then recommended that the Court proceed with the change of plea hearing. *Id.*

Mr. Monaghan indicated to the Court that Jones had not been feeling well that morning due to his physical ailments.  *Id.* Mr. Monaghan stated he did not believe this would affect Jones's competency. *Id.*  The Magistrate Judge told Jones that if he felt it was necessary the Court could give him a period of time to feel better before proceeding and could reconvene the next day.  *Id.*  Jones responded that he felt fine enough to continue through the hearing.  *Id.*  The Magistrate Judge then found Jones competent based on her previous conversation with both Jones and Mr. Monaghan and her own observations. *Id.* ¶ 9.  The Magistrate Judge told Jones that if he started to feel differently during the rest of the proceeding to inform her so the court could continue at a later time if necessary.  *Id.*  Jones stated he would inform the Court of any changes, either physical or emotional, during the hearing.  *Id.*

After Jones answered that he had sufficient time to discuss the case with Mr. Monaghan and was satisfied with his representation, the Magistrate Judge explained the rights Jones would waive by pleading guilty.  *Id.* ¶ 9-10.The Magistrate instructed Jones to inform the Court of any questions he had about the rights he was waiving.  *Id.* After hearing the rights he would waive by pleading guilty, Jones stated he understood and still wanted to plead guilty and waive those rights. *Id.* ¶ 11.

Jones told the Court he had gone over the indictment with Mr. Monaghan, and understood the charges against him, and the maximum penalty for the charges. *Id.* ¶ 11-12. The Court reviewed the elements of the crime and Jones agreed that the government could prove each element of the crime beyond a reasonable doubt. *Id.* ¶ 14.  Jones also agreed that factual basis presented by the government for the crime would be proven beyond a reasonable doubt. *Id.* ¶ 14-18.  When the Court asked Jones to explain in his own words why he was guilty, Jones stated, "I was a convicted felon that possessed firearms in my house; that I knew the firearms were in my house and I was a convict [sic] felon." *Id.* ¶ 18-19.

Jones told the Court he signed the plea agreement on December 16, 2008, after he went over every provision with his attorney and understood every provision. *Id.* ¶ 26-27. The Magistrate Judge explained that the sentencing judge would not be bound by the plea agreement or the sentencing guidelines when imposing sentence.  *Id.*  Jones confirmed that he understood the sentencing guidelines and had gone over them with his attorney. *Id.*

The Magistrate Judge also explained the waiver of appeal and habeas corpus rights contained in the plea agreement. *Id.* Jones stated that he understood the rights he was waiving, and indicated that he had no concerns regarding the content of the plea agreement as a whole. *Id.* ¶ 28-29. Mr. Monaghan then informed the court that he was satisfied the Jones's plea would be knowledgeable and voluntary. *Id.* ¶ 29. Jones then pled guilty to Counts Two and Four of the indictment. *Id.* The Magistrate Judge recommended that the district court accept the plea and enter a judgment of guilty based on her findings that Jones's plea was knowing and voluntary. *Id.* ¶ 29-30.

After the Court had addressed all of the issues, the Magistrate Judge returned to the issue of Jones's competency. *Id.* ¶ 35. The court asked if Jones had fully understood the proceedings. *Id.* Jones responded that he fully understood and did not have any difficulty understanding the full proceeding. *Id.*

Additionally, the Court continued Jones's release on bond pending sentencing. However, the court imposed amended conditions on his release. *Id.* ¶ 32. First, that Jones would avoid all contact with any individual who could be a witness in the matter. *Id.* Second, that Jones would not drive a motor vehicle, due to a pending charge in Washington for driving under the influence. *Id.*

On January 18, 2009, less than two weeks after the change of plea hearing, Jones was arrested in Washington for driving with a suspended license. *Gov't Ex. D* ¶ 17, Dkt. 41-4. On January 22, 2009, the Probation Office filed a petition for action on conditions of pretrial release, stating that Jones violated the condition to not drive a motor vehicle,

and violated the condition not to commit an offense in violation of a state or local law. *Gov't Ex. C* ¶ 2-3, Dkt. 41-3.  In response to the petition, an arrest warrant was issue for Jones.  *Arrest Warrant*, Criminal Dkt. 27.  Jones remained incarcerated pending sentencing after he waived his detention hearing and his pretrial release was revoked. *Waiver*, Criminal Dkt. 33.

Jones was taking pain medication at the time of his arrest and while incarcerated was seen by medical professionals at the jail for his health issues. *Gov't Ex. F-1*, Dkt. 41-9. On February 7, 2009, Jones was seen by medical professionals at the jail and requested pain medication. *Id.* fd-13.  In response to Jones's continued requests for pain medication, Dr. Jeffrey Keller saw Jones on several occasions during February and March.  *Id.* fd-14.  Dr. Keller asked Jones's previous physicians about past medications and medical history, and prescribed pain medication.  *Id.* Although Dr. Keller was not evaluating Jones's mental state, on each of Jones's visits Dr. Keller described Jones showing "normal cognition and affect." *Id.*

On March 16, 2009, Master Social Worker Jim Johnson interviewed Jones at the Ada County Jail as an evaluation for Dr. Keller. *Id.* fd-15.  Jones told Mr. Johnson that he had been diagnosed with a number of mental disorders, and on many occasions had been prescribed medication for these disorders. *Id.*  Jones specifically stated that he was diagnosed a paranoid schizophrenic, but personally believed his symptoms were drug induced and he was misdiagnosed.  *Id.* Jones described himself as having "variable moods, irritability, [and] periods of depression." *Id.*  As a result of his conversation with

Jones, Mr. Johnson stated his belief that Jones had no current hallucinations or thought disorders.  *Id.* Mr. Johnson found Jones "able to clearly and in an organized fashion discuss his situation and concerns."  *Id.*

Also during his incarceration, Jones was seen by a private psychologist for an examination at the request of his attorney to "explore his mental state as a mitigation ground" for sentencing.  *Gov't Ex. M* ¶ 5, Dkt. 41-17.  Jones saw Dr. Bill Arnold on March 9, 2009, approximately two months after pleading guilty.  *Gov't Ex. F* ¶ 1, Dkt. 41-8.  Dr. Arnold stated the reason for the examination was to "evaluate the mental condition of the defendant's cognitive, clinical and personality functioning."  *Id.* On March 22, 2009, Dr. Arnold gave a report to the defendant, incorporating his observations during their five hour examination, the results of the tests he administered, the defendant's medical history, and court documents.  *Id.* ¶ 1-4.

Under a section of the report entitled *Current Clinical Condition*, Dr. Arnold indicated that Jones was "alert and well oriented" during the evaluation.  *Id.* ¶ 4.  Dr. Arnold also observed that "[t]here were no indications of blatant or grossly disorganized psychotic process," although he did note that Jones appeared to be "quite anxious with excessive worry."  *Id.* Dr. Arnold found that Jones's "thought process appeared fairly organized, with some expressive difficulties and mild confusion."  *Id.* The report stated that Jones seemed paranoid about the medical treatment he was receiving in jail, fearing the medical staff drawing his blood because of the germs, or trying to give him a brain scan in order to "program him." *Id.*

Additionally, Dr. Arnold observed that Jones's verbal skills suggested normal intelligence, judgment, and insight. *Id.* The intelligence and cognitive function tests indicated that Jones had a low average to average functioning intelligence, above average cognitive tracking, and below average short term auditory working memory and concentration. *Id.* ¶ 4.

Finally, Dr. Arnold stated a diagnostic impression of Jones stating several mental conditions: (1) "Schizoaffective Disorder, bipolar disorder, depressed;" (2) "Polysubstance Abuse, in early full remission in a controlled environment;" and (3) "Personality Disorder, NOS with borderline and antisocial features." *Id.* ¶ 4-5.

The initial Presentence Investigation report was filed on March 13, 2009. Gov't Ex. D, Dkt. 41-4.  The probation officer conducted an extensive interview of Jones with Mr. Monahan present.  *Id.* The probation officer stated during the interview Jones "displayed no obvious signs of psychological dysfunction" and "appeared oriented as to time, place, and person."  *Id.* ¶ 24:90.

The initial PSR calculated the offense level as twenty six after an upward adjustment for obstruction of justice and did not incorporate a downward adjustment for acceptance of responsibility.  *Id.* ¶ 9. The obstruction of justice was added because Jones's step-daughter, Ms. Robin Ralls, stated that Jones had made threats against her to keep her from testifying against him. *Id.* ¶¶ 6, 4; *Gov't Ex. D-1*, Dkt. 41-5; *Gov't Dkt. D-2* ¶ 2, Dkt. 41-6.

On April 14, 2009, Mr. Monaghan filed *Defendant's Response to Presentence Report and Sentencing Memorandum. Def.'s Br.*, Criminal Dkt. 39. Attached to the memorandum were Dr. Arnold's psychological report and the medical records from Ada County Jail regarding Jones. *Id.* On April 24, 2009, the Government filed a response to the objection to the Presentence Report. *Gov't Resp.*, Criminal Dkt. 41.

The final Presentence Investigation Report was filed on April 29, 2009, and contained a summary of Dr. Arnold's psychological evaluation. *Gov't Ex. D* ¶ 24. However, the Presentence Report also showed that after Jones had finished his treatment at the Washington Psychiatric Center, he competently entered guilty pleas prior to his arrest for felon in possession of firearms in this case. *Id.* ¶ 15-16. Jones entered three guilty pleas between 2003 and 2007 including: (1) Driving with a suspended license; (2) Third Degree Theft; and (3) Harassment. *Id.*

The final Presentence report calculated the offense level as twenty six, a criminal history category of IV, and a guideline range of ninety two to one hundred and fifteen months—same as the initial report. *Id.* ¶ 24. The probation officer noted that Jones's physical impairment might warrant downward departure from the sentencing guidelines due to "uncontrolled diabetes, neuropathy, a dormant pancreas, hepatitis C, a liver lesion, high blood pressure, asthma and an allergy to Sulfa and Imtrex." *Id.* ¶ 26. The probation officer also noted that an upward adjustment might be warranted based on the under-representation of the seriousness of Jones's criminal history. Due to his age at the time of

the offenses, fourteen prior offenses were not included in the calculation of Jones's criminal history category.  *Id.*

On April 30, 2009, the parties filed a joint sentencing agreement where the parties agreed that the total offense level would be twenty four with a criminal history category of IV, resulting in a guideline imprisonment range of seventy seven to ninety six months. *Gov't Ex. H* ¶ 2, Dkt. 41-11.  This agreement removed the upward adjustment for obstruction of justice and did not include downward departure for acceptance of responsibility.  *Id.*  The parties agreed that the defendant would not seek downward departure and the government would recommend a sentence at the low end of the guideline range.  *Id.*

The Honorable Tena Cambell, Chief United States District Judge for the District of Utah, who was acting as a visiting judge in the District of Idaho, sentenced Jones on May 6, 2009.  *Gov't Ex. I* ¶ 4, Dkt. 41-12; *Sentencing*, Criminal Dkt. 43.  During the sentencing proceedings, Mr. Monaghan stated that he did not think "there can be any question that [Jones] is medically and mentally ill."  *Gov't Ex. I* ¶ 9:5-7, Dkt. 41-12.  Mr. Monaghan used his discussion of the physical and mental difficulties of Jones to demonstrate a need for the sentence to reflect the lower range of the sentencing guidelines. *Id.* ¶ 10:4-16.

Jones made the decision to speak before Judge Campbell pronounced sentence. *Id.* ¶ 17:2-8.  Jones stated he wanted to "take responsibility for [his] actions," and that he understood he "deserved to be punished."  *Id.*  Jones was sentenced to eighty six months

in prison, followed by thirty six months supervised release. *Id.* ¶ 22; *Judgement*, Criminal Dkt. 44.  Judge Cambell dismissed Counts One and Three of the indictment on the government's motion pursuant to the joint sentencing agreement. *Gov't Ex. I* ¶ 4.

Over three years later, on August 2, 2012, Jones filed a *Motion to Vacate, Set Aside or Correct Sentence* under 28 U.S.C. § 2255 alleging ineffective assistance of counsel.  Jones alleges his counsel, Mr. Monaghan, failed to object to the search warrant, and failed to request a competency hearing during the change of plea and sentencing phase of the proceedings.  *See Def.'s Mot.*, Dkt. 1.

## LEGAL STANDARD

Under 28 USC § 2255, there are four grounds for a court to grant relief to a prisoner who challenges the length of his sentence: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).  Although there are four categories, the claims that fall within the scope of § 2255 are minimal.  *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981).  A motion filed pursuant to § 2255 must contain specific facts which would entitle an individual to relief.  *United States v. Rodriguez*, 347 F.3d 818, 824 (9th Cir. 2003).

A Federal District Court may dismiss a § 2255 "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party

is not entitled to relief." 28 U.S.C. § 2255, Rules, Rule 4(b).   If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss the § 2255 Motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the court does not dismiss the proceeding, then the court can determine if an evidentiary hearing is necessary.  *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).  An evidentiary hearing is not needed in a § 2255 case when facts can be determined from evidence in the record and prior testimony. *Id.*

## ANALYSIS

Jones's grounds for asserting the § 2255 motion are based on ineffective assistance of counsel claims.  Jones cites to three different stages of the proceeding to show ineffective assistance of counsel: (1) his counsel failed to challenge the validity of the search warrant during the pre-trial stage; (2) his counsel failed to address the defendant's competency issues with the court during the plea proceedings; and (3) his counsel failed to bring his incompetency to the attention of the court during sentencing. *Def.'s Mot.* ¶¶

3-17, Dkt. 1.  Even accepting the truth of Jones's factual allegations, no hearing is warranted.  The Court will decide the motion based on the briefing and the record.

To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that his representation fell below objectively "reasonabl[e] effective service" and (2) the reasonable probability that the result was prejudiced by counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). The Strickland two-part test is applicable to cases where a defendant claims ineffective assistance of council during a guilty plea. *Hill v. Lockhart*, 474 U.S. 54, 58 (1985). Allegations that are merely conclusory are insufficient to support a claim for ineffective assistance of counsel.  *United State v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).  The Court may evaluate the elements of ineffective counsel in either order, and need not show that both elements are not if there is insufficient showing of one.  *Id.* at 697.

Generally, there is no rule that defines the basis for a finding of ineffective counsel; rather it is based on case-specific circumstances.  *Strickland*, 466 U.S. at 690. However, there is a presumption that "counsel's conduct falls within a wide range of reasonable professional assistance."  *Id.* To show that counsel did not perform reasonably effective service, the defendant must show that counsel made errors that no reasonable attorney would have made under the same circumstances.  *Id.* In evaluating counsel performance, the court should analyze performance throughout the case to determine if the alleged erroneous conduct "overcomes the presumption that counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986).

To show prejudice, a defendant must show that without counsel's errors, there is a "reasonable probability" that the result of the case would be different. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The burden to show prejudice is on the moving party. *Id.* The standard to show prejudice is "highly demanding." *Kimmelman*, 477 U.S. at 381-82. Even if there were an unreasonable error by counsel, if it does not affect the outcome, the judgment should not be set aside. *Strickland*, 466 U.S. at 62.

### 1.  Failing to Object to the Search Warrant

Jones claims that he received ineffective assistance of counsel because his attorney advised him not to challenge the search warrant. To prevail on a claim of ineffective assistance of counsel for failing to file a motion to suppress evidence seized in an unlawful search, a prisoner must prove (1) that his Fourth Amendment claim was meritorious, and (2) that there is a reasonable probability that the result of the proceeding would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1989).

Although it was difficult to ascertain the defendant's exact arguments regarding the Fourth Amendment claims, the court has determined that Jones claims the search warrant was invalid because (1) there was insufficient probable cause for the warrant; (2) it failed to state with particularity the place to be searched; and (3) it failed to state with particularity the items to be seized. *Def.'s Br.* ¶ 2; *Def.'s Reply Br.* ¶ 13-14.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It goes on to state that "no warrants shall issue, but upon probable cause, supported by Oath ,… and particularly describing the place to be searched, and the persons or things to be seized." *Id.*

### (A)   *Probable Cause*

"Probable cause means a 'fair probability' that contraband or evidence is located in a particular place." *U.S. v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983)). Whether a fair probability exists "depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question." *Id.* (Internal quotation and citation omitted). "Neither certainty nor a preponderance of the evidence is required." *Id.* Although it is sometimes difficult to determine whether an affidavit supports a probable cause finding, "resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants." *Id.* at 1050–51.

Jones argues that the affidavit in this case lacked a basis for finding probable cause because Detective Ward failed to corroborate the information obtained from Mr. and Mrs. Brower.

To establish probable cause, officers must independently investigate and corroborate a witness's statement. *Hopkins v. Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009). According to Detective Ward's Affidavit, the investigation into Jones began

approximately six months before Mr. and Mrs. Bower came to the police station to give a statement. *Gov't Ex. J* ¶ 2, Dkt. 41-13. The investigation into Jones's activities began after two individuals, Cody Adams and John Rearick, were arrested in Utah for possession of ten pounds of marijuana. *Id.* Mr. Adams told Utah detectives that he was supposed to deliver the marijuana to a man named Todd Jones, who had recently moved from Seattle, Washington to Twin Falls, Idaho to set up his drug business. *Id.*

Detective Ward then conducted a back ground check on Jones, and determined the vehicles that Jones had registered in his name were registered in Washington. *Id.* Mr. and Mrs. Blower came to the precinct to report Jones's involvement in selling marijuana and prescription medication. *Id.* ¶ 4. Mr. Blower also reported that Jones was in possession of at least three firearms at his residence. *Id.* The Blowers during their interview relayed to Detective Ward many of the facts he had discovered about Jones during the background check. *Id.* ¶ 3. The Blowers correctly identified Jones's vehicles, Jones's birthday, and confirmed that he had recently moved from Seattle to Twin Falls. *Id.* Mr. Brower also stated that Jones told him that Mr. Adams and Mr. Rearick were arrested in Utah when Jones sent them on a drug "run." *Id.* ¶ 4.

The original allegation by Mr. Adams that the marijuana in Utah was Jones's was corroborated by Mr. and Mrs. Blower nearly six months later. Because of this, Detective Ward had sufficient evidence to believe at least one crime had been committed by Jones. Mr. and Mrs. Blower also confirmed that Jones was involved in selling marijuana, and stated that Jones had drugs and firearms in his house. Based on the factual circumstances,

including reasonable inferences, Detective Ward had sufficient basis to believe that drugs, firearms and other evidence were located in the house.

### (B)   *Stating with Particularity the Place to be Searched*

Jones argues that the search warrant violated his rights under the Fourth Amendment because it failed to state with particularity the place to be searched because the address on the search warrant was incorrect. *Def.'s Br.* ¶¶ 4-10, Dkt. 1.

When evaluating a warrant's description of the place to be searched, "[i]t is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. U.S.*, 267 U.S. 498, 503 (1925).  A warrant's description is sufficient if officers can determine and locate the premises from the description "with reasonable effort," and whether it is reasonably probable that officers may search another place based on the description. *U.S. v. Mann*, 389 F.3d 869, 876 (9th Cir. 2004).

A search warrant address may be technically incorrect, but it may still reasonably describe with particularity the place to be searched based on the factual circumstances. *U.S. v. Turner*, 770 F.2d 1508, 1511 (9th Cir. 1985) (citing *U.S. v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)).  In *Gitcho*, the magistrate judge issued a warrant with an incorrect address. *Gitcho*, 601 F.2d at 371. Officers mistakenly believed that the apartment complex was located on a street that bordered the building on an alternative side rather than listing the actual street address. *Id.* The court held that the address combined with other factors was sufficient under the fourth amendment standard for a search warrant. *Id.*

In this case, the warrant description of the place to be searched was sufficiently particular for the warrant to be valid.  The address on the search warrant was listed as 252 Leisure Lane, when the correct address of the house was 252 Villa Road.  *Gov't Ex. K*, Dkt. 41-15.  The House searched was on the corner of Leisure Lane and Villa Road and had the numbers 252 "affixed to the west side of the doorframe."  *Id.* Idaho State Police Officers reasonably misstated another bordering street as the home address and had the correct house number listed.  The search warrant contained a detailed description of the premises.  *Id.* Attached to the search warrant affidavit was a picture of the property searched.  *Gov't Exhibit J-1*, Dkt. 41-14.  Additionally, Detective Ward, the officer who prepared the search warrant affidavit and knew the residence to be searched, executed the search warrant.  *Gov't Ex. Ex. J*, Dkt. 41-13; *Gov't Ex. L*, Dkt. 41-16.

Based on the factual circumstances, there is no evidence that the officers would have trouble locating the residence, or would search another residence by mistake.

### (C)    *Stating with Particularity Items to be Seized*

"Search warrants must be specific in both particularity and breadth." *U.S. v. Brobst*, 558 F.3d 982, 993 (9th Cir. 2009). "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.* (Internal citation and quotation omitted). A search warrant must describe the objects to be seized with enough specificity to enable the officer conducting the search to reasonably identify the objects authorized to be seized. *Id.* This, in turn, prevents "general,

exploratory rummaging in a person's belongings." *Id.* In determining whether a search warrant's description is sufficiently specific to comply with the Fourth Amendment, the Court must consider the following questions:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Millender v. County of Los Angeles*, 620 F.3d 1016, 1024 (9th Cir.2010).

In this case, only the seizing of the firearms is at issue. *Indictment*, Criminal Dkt. The search warrant affidavit contained a witness statement testifying the presence of firearms at the residence. *Gov't Ex. J* ¶ 4, Dkt. 41-13. Detective Ward also stated in his affidavit that a background check he personally conducted on Jones revealed an extensive criminal history indicating that the defendant was a convicted felon. *Id.* ¶ 2. The search warrant affidavit contained sufficient probable cause to determine that a crime was being committed at the residence: a convicted felon in possession of a firearm. Because the crime encompasses all firearms at the residence, the warrant was valid when it allowed officers to seize all firearms in the home.

There are three reasons why Jones cannot establish ineffective assistance of counsel based upon counsel's failure to challenge the search warrant: (1) the search warrant claims are not meritorious; (2) after a guilty plea a defendant cannot allege constitutional claims; and (3) search and seizure claims cannot be brought for collateral review in a § 2255 motion.

First, based on the previous analysis, Mr. Monaghan, defendant's counsel, would not have been able to succeed on the claim that the search warrant was invalid.  Mr. Monahan stated he would not have brought a motion to suppress the search warrant based on the claims made by Jones because he did not believe it would be meritorious based on the precedent set forth by *United States v. Mann* and *Godinez v. Moran*.  *Gov't Ex. M* ¶ 2, Dkt. 41-17.  Because it is apparent that the search warrant claims are not meritorious, Jones's claim for ineffective assistance of counsel for failure to object to the search warrant must fail.

Second, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). This is so because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Id.*  Jones acknowledged that he committed the crime of possessing a firearm as a felon in open court during both his change of plea hearing and the sentencing hearing. *Gov't Ex. B*, Dkt. 41-2; *Gov't Ex. I*, Dkt. 41-12. Therefore he cannot raise the issue of a violation of his Fourth Amendment right from unreasonable search and seizure that related to the original indictment.

The search and seizure can be dismissed for a third reason. Fourth Amendment claims of illegal search and seizure are not cognizable in § 2255 proceedings. *See Stone v. Powell*, 428 U.S. 465, 486–89 (1976) (reaffirming that the exclusionary rule exists to

deter Fourth Amendment violations by law enforcement personnel rather than to remedy a wrong against a defendant and as such is a "judicially created remedy rather than a personal constitutional right"). *See also United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir. 1980) (citing *Stone*, holding that Fourth Amendment violation cannot be raised on collateral review); *Tisnado v. U.S.*, 547 F.2d 452, 456 (9th Cir. 1976) (applying *Stone* to § 2255 motions).

### 2. *Competency*

A defendant is competent to plead guilty when he has "sufficient presentability to consult with his lawyer with a reasonable degree of rational understanding" and "he has the… factual understating of proceeding against him." *Dusky v. U.S.*, 362 U.S. 402, 402 (1960); *See also Godinez v. Moran*, 509 U.S. 389, 389 (1993).

Jones claims he received ineffective assistance of counsel because Mr. Monaghan failed to move for a competency hearing prior to the change of plea hearing and sentencing. *Def's. Br.* ¶ 11-12, Dkt. 1. Jones bases his claim that he was incompetent to enter a guilty plea on his history of mental illness, his prescription drug use, and the evaluation provided by Dr. Arnold. *Id.*

Counsel's failure to move for a competency hearing only rises to the level of ineffective assistance of counsel when (A) there is sufficient indicia of incompetence to cause reasonable counsel to doubt the defendant's ability to understand or assist in the proceedings and (B) if counsel had raised the issue of competency there is a reasonable probability that the defendant would have been found incompetent. *Stanley v. Cullen*,

633 F.3d 852, 862 (9th Cir. 2011) (citing *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001).

In this case, there was not sufficient evidence to give objectively reasonable counsel reason to doubt Jones's competency.

Jones's statements during the change of plea hearing provide strong evidence countering his claim that he was mentally incompetent during the change of plea hearing and sentencing. At the hearing, Jones provided rational and logical answers to each of the Magistrate Judge's questions, stated on several occasions that he understood the proceedings, and stated he felt well enough to proceed. *Gov't Ex. B* ¶ 6-8, Dkt. 41-2.

Jones's mental condition was addressed on several occasions throughout the proceedings. Specifically during the plea phase, Mr. Monaghan raised a concern about Jones's ability to understand the proceedings due to the medication he was taking. *Id.* ¶ 5. However, the Magistrate Judge proceeded to ask additional questions regarding Jones's competency. *Id.* ¶ 6-7. After these questions, Mr. Monaghan stated that he believed Jones could proceed under the competency standard. *Id.* ¶ 8. Additionally, the Magistrate Judge stated specifically during the hearing, based on her own personal observations, that Jones seemed competent to stand trial. *Id.* ¶ 9.

Mr. Monaghan's argument during the sentencing proceeding for the minimum sentence in the guideline range was based on Jones's extensive medical history, including his physical and mental problems, and his use of pain medication. *Gov't Ex. I* ¶ 9-11, Dkt 41-12. Mr. Monaghan also referenced the evaluation by Dr. Arnold to show cause for

Jones to receive a sentence at the low end of the guideline range. *Id.* ¶ 9.  Mr. Monaghan asked for the evaluation from Dr. Arnold for the purpose of "explor[ing] his mental state as a mitigation ground" for sentencing. *Gov't Ex. M* ¶ 5, Dkt. 41-17.

Mr. Monaghan signed an affidavit stating he knew the Ninth Circuit competency standard at the time of the change of plea hearing and sentencing.  *Gov't Ex. M*  ¶ 2, Dkt. 41-17. He stated that throughout the defense, he never had a doubt regarding Jones's competency to proceed. *Id.* Mr. Monaghan observed Jones raise reasonable questions about the plea agreement, and he felt that Jones understood his explanations fully. *Id.* ¶ 3. Mr. Monaghan stated that through their interactions "Jones demonstrated an ability to consult" with him.  *Id.*  Mr. Monaghan also believed Jones had a "rational and factual understanding of the charges and proceedings against him."  *Id.*

Both the Court and Mr. Monaghan found that Jones was competent during the change of plea and sentencing proceedings.  Because there is no evidence that counsel's performance was objectively unreasonable in this area, or that Jones was prejudiced, Jones is not entitled to relief under  the ineffective assistance of counsel claim for failing to move for a competency hearing.

## ORDER

**IT IS ORDERED:**

Defendant's Motion to Vacate, Set Aside, or Correct Sentence (Dkt. 1) is **DENIED**.



DATED: August 29, 2013

B. Lynn Winmill
Chief Judge
United States District Court